## THE ACTIVE.

## THE OCEAN WAVE.

(*District Court, S. D. New York.* October 25, 1884.)

COLLISION—TUG AND TOW—RUNNING NEAR TO PIERS BETWEEN OTHER VESSELS.
The tug A., with the barge O. W. in tow on a hawser, came down the East river against the tide about 200 feet from shore, and ran between two schooners, which were about 100 feet apart, the outer schooner being also about 100 feet farther up the river. The barge, after rounding past a projecting pier farther up stream, was obliged to port her helm to clear the upper schooner, and she was afterwards unable to stop her sheer in time to avoid running into the lower schooner. *Held*, upon the facts, that the tug was in fault for navigating so near the piers, and also for needlessly attempting to pass between the two schooners, and should pay the whole damage.

In Admiralty.

*Benedict, Taft & Benedict,* for libelant.

*Alexander & Ash,* for the Active.

*Edgar Swain* and *J. A. Hyland,* for the Ocean Wave.

BROWN, J. The steam-tug Active, having the barge Ocean Wave in tow upon a hawser of about 20 fathoms, in coming down the East river against the flood-tide, instead of proceeding near the middle of the stream, as required by law, was going near the New York shore for the purpose of availing herself of the slack water. Thus her course lay between two schooners, the J. W. Huston and the libelant's schooner, the Wm. Blakeley. The wind was north-west, and both schooners were engaged in heaving by windlass towards the New York shore, the Blakeley being about 100 feet nearer the shore than the Huston. The tug passed about midway between them, but the barge, in coming around the Twenty-sixth street pier, which was considerably longer than the one below, found it necessary to port her helm in order to avoid coming in contact with the bowsprit of the Huston. Before her sheer could be fully broken, though her helm was immediately starboarded on clearing the Huston, she ran upon the starboard quarter of the Blakeley, which was only about 100 feet below the Huston.

Having the whole middle part of the river clear, where she was bound by law to go, I must hold the tug in fault for proceeding as she did near the shore, and undertaking to thread the gauntlet of other vessels there lying in her way. She had no right to impose this hazard upon the tow. The available space between the two schooners is not estimated to be above 100 feet, and the fact that one was below the other, and that both were below the projection of the Twenty-sixth street pier, added to the difficulties of navigation imposed upon the barge. The primary fault being clearly in the tug in selecting such a channel, instead of pursuing her proper course in the middle of the river, only clear proof of neglect or of very unskill-

ful handling on the part of the barge could justly charge the latter with contributing to the collision. The evidence on this point against the barge is by no means clear or satisfactory. The time and space available for her maneuvering were both small, and almost approach the situation recognized as a situation *in extremis,* in which even erroneous handling at the moment is not deemed a fault, when the situation is brought about by the wrong of another. But it is not even clear from the testimony that the barge omitted anything she might have done, or did anything she ought not to have done, in first avoiding the Huston, though she afterwards came in contact with the Blakeley.

I must therefore charge the whole loss upon the Active, and allow a decree against her, with costs; while as to the Ocean Wave the libel should be dismissed, with costs.